## CHARLES L. BARTLETTE *vs.* THE NORWICH AND WORCESTER RAILROAD COMPANY.

Several railroad companies entered into a contract by which one of them was to build a connecting road and the others to contribute a specified proportion of the expense—the company building the road to control it and to pay over the net earnings of the road to a trustee to be agreed on, who should distribute the fund monthly among the contributing companies until their contributions were reimbursed, after which the road was to be owned by all the companies in the proportion of their contribution to the expense of building it. A few weeks later and before the road was built another contract was entered into by the same companies, by which it was agreed that two express through trains should run over their respective roads daily for the term of five years. The connecting road was built, and the share of each company towards the expense paid, except a part of that due from the *N* company, which was afterwards collected by suit, but soon after by reason of the failure of the *N* company, the arrangement for through trains and a through route was abandoned, and the new road went to decay. Some years after, the company that built the connecting road repaired it and used it in connection with its own road. Upon a petition in chancery against this company, brought by a purchaser of the rights of the insolvent *N* company, for an account of the net earnings of the connecting road and the appointment of a trustee to receive them, that the share due to the *N* company might be applied to the reimbursement of its share of the expense of the construction of the road,—it was held, that the second contract was not to be regarded as superseding the first; that the duties of the respondent company under the first contract to apply the net earnings of the road to the reimbursement of the expense of its construction were not affected by the insolvency of the *N* company and the defeat of the plan for through trains; and that a trustee should be appointed to receive the net earnings of the road from the respondents.

BILL in equity, brought to the superior court for New London county. The facts were found and the case reserved for the advice of this court. The case is sufficiently stated in the opinion.

*Lippitt* and *Graves*, for the petitioner.

*Wait* and *Halsey*, with whom was *A. Coit*, for the respondents.

HINMAN, C. J. The Norwich and Worcester Railroad Company were authorized by the legislature to connect their railroad track in the city of Norwich with the track of the New London, Willimantic and Palmer railroad in said city; and as this connection was supposed to be pecuniarily advantageous to both of these companies, as well as to the New Haven and New London Railroad Company, and to the Norfolk County Railroad Company, incorporated by the legislature of Massachusetts, all of these four corporations united for the purpose of building the connecting road, and to that end, on the 15th of October, 1853, they entered into a contract by which it was stipulated that the connecting road should be built by the Norwich and Worcester company, but the expenses of its construction were to be borne by all four of the companies in certain proportions agreed upon in the contract; and as the connecting road was to be operated by the Norwich and Worcester company, a tariff of charges for certain freight and passengers transported over the connecting road was agreed upon in the contract, which, after deducting the expenses of repair, was to be paid over to a trustee, to be by him paid to each of the parties in proportion to the contributions of each of them towards its construction, until the expense of construction was reimbursed, when the parties were each to have an interest in the connecting road, in proportion to the contribution of each towards its construction. The petitioner now owns the interest in the connecting road which by the terms of the contract it was contemplated would belong to the Norfolk County Railroad Com-

pany ; and the amount of that company's contribution to the expense of construction has been fully paid. The respondents, the Norwich and Worcester Railroad Company, own the interest of the New London and New Haven Railroad Company ; and all sums due them for the construction of the connecting road have now been fully paid. The connecting road .has since its construction been operated by the Norwich and Worcester company, but no trustee has been agreed upon by the parties, as contemplated in the contract, although the Norwich and Worcester company has been requested to agree upon one ; .but they deny their liability to account for the use they are now making of the road, and therefore refuse to unite in the selection of such trustee ; and they are collecting the present earnings of the road for their own use. The petition states these facts, and prays for the appointment of a trustee under the contract, and for an account, and a decree to enforce payment to the trustee of the money due and to become due to the parties to the contract, for the use of the respective parties now interested therein ; and for general relief.

The substance of the petition is found to be true, and as it is not claimed but that a strong *prima facie* case for the equitable relief asked for is presented, the case must turn upon whether there is any thing in the answer, so far as it is also found true, which is sufficient to deprive the petitioner of his remedy.

The respondents rely mainly upon the circumstance that, subsequent to the contract relied upon by the petitioner, and prior to the construction of the connecting road, for the purpose of forming a through land route between Boston and New York, over certain portions of the first contracting company's railroads, and over the tracks of the New Haven and New York railroad, and the Southbridge and Blackstone railroad, they, in connection with the last mentioned company, on the 8th day of November, 1853, entered into another contract, by which not less than two express trains were to be run daily each way, between Boston and New Haven, by the way of New London, Norwich and Mechanicsville, over their re-

spective roads, the equipment therefor to be purchased and owned by the contracting companies in proportion to the number of miles to be run on each, and the passenger fares through to be divided *pro rata*, per mile, among the companies, after deducting the amount before agreed upon in the first contract for passengers carried over the connecting track at Norwich, with other stipulations not material to the present question. And the respondents claim and insist that the establishment of this through route or of some similar route was the principal object in procuring authority to construct the connecting track, and that the agreement last mentioned has ceased to be operative through the negligence or fault of the Norfolk County Railroad Company; that that company and the Southbridge and Blackstone company became involved and embarrassed, and unable to comply with their contract obligations; and that in consequence thereof the arrangement for through trains and a through route wholly failed, and was discontinued, and the connecting track lay idle and was going to decay until it was repaired by the Norwich and Worcester company, for the purpose of running cars in connection with their steamboats from New London to New York, having no connection whatever with the original purpose for which the connecting road was built. The case thus made by the respondents is therefore this, in substance, that the second contract for running through trains between New Haven and Boston failed, by reason of the embarrassed condition of the Norfolk Railroad Company, and the companies which were connected with it or succeeded to its rights and obligations, and therefore there is now no accountability on the part of the Norwich and Worcester company to the Norfolk company, or its assignees, growing out of the first contract of October 15, 1853.

In this we think the respondents are clearly wrong. The connecting road was built under the first contract, by funds contributed by the parties to it, and by them alone. Stipulations were contained in that contract relative to the rates of transporting passengers and freight over the connecting road, and these stipulated earnings of the road were set apart

as a fund to reimburse the parties for the expenses incident to building the road. Had no other contract been entered into, the Norwich and Worcester company would clearly have been accountable according to the terms of this first contract; and, so far as those terms have not been altered by the parties themselves, they are still binding. But that contract was not annulled or changed by the second contract, and was not intended to be changed in the least, so far as accounting for the stipulated receipts for the purpose of reimbursing the parties for the expense of construction is concerned. So far from intending any such change, the parties to the second contract expressly sanction the first by providing for the deduction from the charges for transporting passengers over their whole route, of the amount before agreed upon for passengers carried over the connecting track at Norwich.

The object of the parties in building the connecting road, which was the establishing a through route between Boston and New Haven or Boston and New York, and the failure of that object, either by reason of the insolvency of the Norfolk county road, or by the unreasonable conduct of the Norwich and Worcester company, acting through its president Mr. White, furnishes no reason for not accounting according to the terms of the first contract, for such earnings of the connecting road as have been received, notwithstanding the failure of this object. The connecting road is in the possession and use of the Norwich and Worcester company. That company under the charter can alone control it. And why should it not account for its use pursuant to the terms of the contract under which it was built, so far as those terms apply to any business in the transaction of which the connecting road is used? Had the business under the second contract continued it would doubtless have greatly increased the earnings of the connecting road. But that was not the only business contemplated by the parties to the first contract; and indeed so far as appears from that contract itself, no such arrangement as that under the contract of Nov. 8, 1853, was at first contemplated by the parties. The object is stated to be to increase and facilitate the business of all the companies

who were parties to the first contract, and especially the through travel; and to that end each of the companies stipulated to afford every reasonable accommodation in furtherance of the object. But this we suppose might be accomplished to a reasonable extent by each company for itself, without running the same cars through the whole route. But whether so or not, the reservation of receipts from passengers and freight passing over the connecting road, was to extend to all passengers and freight except that going to and from New London and Norwich and the intermediate stations. All other receipts for passing over the new track were to contribute for the purpose of reimbursing the expense of its construction.

But it is claimed that the contract of October 15, 1853, was abandoned by the parties to it. We see no evidence of this. The embarrassed condition of the Boston and New York Central Railroad Company, into which the Norfolk county company was merged, and, as the Norwich and Worcester company claims, the consequent ceasing of the running of through trains, did not prevent the Norwich and Worcester company from commencing and prosecuting and enforcing by the decree of the superior court its rights against the petitioner, to the payment of that portion of the expense of constructing the connecting track which originally the Norfolk county company was to pay, under the contract claimed to have been abandoned. And it seems a little ungracious for the respondents to claim the abandonment of a contract, while they are enforcing their rights to contribution against the petitioner under it. Besides, on examining the question as to which company was most in fault for the discontinuance of the through route, commenced under the contract of Nov. 8, 1853, the finding of the court appears to be that that arrangement was first broken up by the Norwich and Worcester company, acting through its president, Mr. White, in refusing to comply with the terms of the arrangement which had been agreed to, and by failing to comply with the terms of a second arrangement made for the same purpose. And it is no answer to this for that company now to say that the Norfolk

company subsequently became embarrassed and unable to meet its obligations, since it cannot now be known that its embarrassed condition was not caused by the previous neglect of the Norwich and Worcester company to comply with its engagements.

But the principal difficulty in the respondents' case arises from the assumption that the only object of building the connecting road was to establish and maintain a through route between Boston and New Haven over it; and that all the contracts were made for the sole purpose of furthering this object; and that when this through route failed, the Norwich and Worcester company were no longer accountable for the earnings of the connecting road, by reason of any other than this strictly through travel over it.

But it is said that if the petitioner is entitled to an account, he is not entitled to a trustee, because the only parties who have any interest in the matter are the petitioner and the Norwich and Worcester Railroad Company, and no reason now exists for the appointment of such trustee. The Norwich and Worcester company however have not acquired the interest of the New London, Willimantic and Palmer company. That company, while it is receiving the benefit of its present arrangement with the Norwich and Worcester company, is willing to unite with it in resisting the appointment of a trustee. But when the present arrangement ceases, and this application may have the effect to break it up, that company may discover that it has interests which it may be unwilling to forego.

But however this may be, the parties to the first contract thought it important to stipulate that they would place the amount received from the connecting road in the hands of a trustee to be agreed upon by them. This was a reasonable and proper agreement at the time, and nothing in our opinion has intervened to render it less so now. We think therefore upon the whole case that the petitioner is entitled to an account upon the basis of the contract of October 15th, 1853, and that a committee should be appointed to take the account, and a trustee be appointed by the court, as prayed for; the

parties, if they see cause, to have liberty to amend their pleadings as they may be advised. And so we advise the superior court.

In this opinion the other judges concurred.